# LOTTERHAND *v* HANSON.

PATENTS; INTERFERENCES; DILIGENCE.

1. When an application for a patent has been allowed and then abandoned, and subsequently or before the forfeiture has been completed another application is filed in which substantially the same invention is described and claimed, the applicant is entitled, in an interference case, to the filing date of his first application as that of his constructive reduction to practice. (Following *Cain* v. *Park*, 14 App. D. C. 42.)

2. If the senior party to an invention is shown to have conceived an invention three or four months prior to the date of the junior party's conception, and also to have constructively reduced to practice before either actual or constructive reduction to practice by the junior party, he is entitled to an award of priority of invention.

3. To delay one invention for the sake of another projected invention to be used in connection with it, and which may never be realized, cannot in patent law be construed as an exercise of due diligence.

4. Ordinarily the question of operativeness will not be considered by this court in an interference case.

No. 246.   Patent Appeals.   Submitted March 8, 1904.   Decided April 5, 1904.

HEARING on an appeal from the decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion of the Court.

*Mr. Charles Elwood Foster* and *Mr. Philip Farnsworth* for the appellant.

*Mr. John C. Pennie* and *Messrs. Williamson & Merchant* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In this case, which comes to us by appeal from the Commissioner of Patents, the matter of controversy is the question of

priority of invention of an improvement in combined typewriting and adding machines, which consists—

"in providing the typewriter with ten numeral-keys from 0 to 9, and the adding-machine with a like number, and in so connecting the corresponding keys of the two series that the typewriter keys can be operated as usual in typewriting without affecting the adding mechanism, but so that the numeral-keys of the adder will cause the typewriter keys to print the amount which is put into the adding mechanism by depressing any numeral-key thereof."

The device is thus described in two claims formulated in the Patent Office·

"1. In adding attachments for typewriters, the combination with the transversely-movable paper-carriage and the regular type-keys and printing devices of the typewriter, of a supplemental series of adding-keys arranged to actuate the printing devices of the corresponding type-keys, and an adding mechanism operated by the adding-keys to add together the amounts printed by the operation of the keys.

"2. The combination with a typewriter involving finger-operated numeral-keys, of computing mechanism comprising a bank of finger-operated digit-keys, with finger-pieces exposed where they may be struck by the fingers, and connections between the numerical keys of the typewriter and the corresponding digit-keys of said computing mechanism, which connections cause the latter to operate the former, but permit the former to be operated without operating the latter."

This improvement the appellee, Hans Hanson, in his amended preliminary statement, claims to have conceived on or about December 1, 1896; to have disclosed it to others on or about March 1, 1897; to have partly completed a model which showed the invention in the same month of March, 1897; and to have reduced the invention to practice by the construction of a full-sized operative machine in February of 1898. On March 31, 1898, he filed an application for letters patent for several claims, one of which was the same in substance as the claims of the application upon which the present interference

is based.  But this application of March 31, 1898, after having been allowed as patentable on November 20, 1899, was permitted to be forfeited; but on August 13, 1900, before the appli-cation was regarded under the law as abandoned, the application now pending was filed.  And it has been held by the several tribunals of the Patent Office that the applicant, apart from any actual reduction to practice by him, is entitled to constructive reduction to practice as of the date of his first application, March 31, 1898.

The appellant, Jason C. Lotterhand, in his amended preliminary statement, claims to have conceived the invention in controversy in March or April of 1897; to have disclosed it in April of 1897, and again in January of 1898; to have made drawings of it in May of 1897; and to have made complete working drawings and a demonstrative model, and to have reduced the invention to practice by the construction of a full-sized operative machine in England in the years 1899 and 1900. His application for a patent was first made on January 17, 1901; but it was found proper to divide the claims, and the application now pending, whereon this interference is based, was filed on April 27, 1901.

The appellee, Hanson, is therefore the senior, and the appellant, Lotterhand, the junior applicant.

All the tribunals of the Patent Office have awarded judgment of priority of invention in favor of Hanson.  The examiner of interferences so held on the ground that it was not shown that Lotterhand had any adequate conception of the invention at any time previous to March 31, 1898, at which time, as all the tribunals held, Hanson became entitled to the credit of a constructive reduction to practice by the filing of an allowable application.  The board of examiners-in-chief and the Commissioner of Patents decided in favor of Hanson, not only on the ground on which the examiner of interferences had based his decision, but also on the ground that, if Lotterhand had an adequate conception of the invention on or before March 31, 1898, he was not diligent in reducing it to practice, and did not

actually reduce it to practice until long after the constructive reduction to practice by his rival.

When an application for a patent has been allowed, and then abandoned, and subsequently, before the forfeiture has become complete, another application is filed in which substantially the same invention is described and claimed, we cannot, since the decision in the case of *Cain* v. *Park,* 14 App. D. C. 42, regard it as an open question in this court that the applicant is entitled to the filing date of his first application as that of his constructive reduction to practice.   There was no error, therefore, in the allowance by the tribunals of the Patent Office in this case of the date of March 31, 1898, as that of the constructive reduction to practice by the appellee, Hanson, of the invention here in controversy.

The tribunals of the Patent Office do not seem to have considered the testimony of Hanson in regard to his earlier conception of the invention.   This conception, it is claimed by him, took place in the latter part of the year 1896, while Lotterhand does not claim conception before March or April of 1897.   If we give to the testimony on behalf of Lotterhand in this regard all the force and efficacy claimed for it by his counsel and denied to it by all the tribunals of the Patent Office—and there is certainly plausibility in the claim—yet it does not appear to be any stronger or more satisfactory than that adduced in support of the prior conception by Hanson.   On neither side is the testimony entirely satisfactory; but no reason is shown to discredit that on behalf of Hanson, and it would appear to be sufficiently proved that he had an adequate conception of the invention as far back as December of 1896.   Now, if he had such conception in December of 1896, which antedated by three or four months the date claimed by Lotterhand for his own conception, and if he is entitled to the date of March 31, 1898, as that of his constructive reduction to practice, which is long anterior to any reduction to practice whatever, actual or constructive, by Lotterhand, it is difficult to see why Hanson is not entitled to judgment of priority of invention.

But even if we leave out of consideration, as the tribunals of

the Patent Office have done, the question of the prior conception by Hanson; and if we assume that Lotterhand was the first to conceive the invention, while the tribunals of the office refuse to concede to him the possession of any adequate idea of the invention before March 31, 1898, yet it is conceded, and it is beyond question, that Lotterhand did not reduce the invention to practice until long after the application of Hanson was filed in the Patent Office, wherein was shown his allowable device. This necessarily raises the question of due diligence on the part of Lotterhand.

Now, we find no sufficient reason on the part of Lotterhand for his delay in reducing his invention to practice, or at least filing his application therefor. The excuse given by him or for him is that he desired to invent a new typewriter wherein to introduce his invention and thereby to avoid the necessity of using any of the existing typewriters. In other words, having made one invention, complete in itself and ready to be patented, if he did actually make it or have a conception of it, he deliberately waited for a year or two years until he should have time to make another invention to combine with it and wherein to use it to the best advantage for himself. But this excuse cannot be accepted under any of the authorities as explaining the absence of diligence, while another man was actively in the field of invention at the same time. To delay one invention for the sake of another projected invention to be used in connection with it, and which might never be realized, cannot be construed in the patent law as an exercise of due diligence.

There is a suggestion that the device of the appellee, Hanson, is inoperative. But into this question of operativeness we cannot enter in the present case. The tribunals of the Patent Office have all regarded the Hanson device as operative and patentable, even though it be inferior to the device of Lotterhand; and we cannot well go behind their decision in that regard. Ordinarily, as we have repeatedly held, the question of operativeness is not to be considered by this court in an interference case.

We are of opinion that no sufficient reason has been shown to disturb the concurrent decision of all the tribunals of the

Patent Office in this case. The decision of the Commissioner of Patents must therefore be affirmed.

The clerk of the court will certify this opinion and the proceedings of the court in the premises to the Commissioner, according to law.                                    *Affirmed.*